IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEBRA BARKER,

    Plaintiff,

v.

VILLAGE OF CAHOKIA,
MAYOR FRANK BERGMAN,
JOANN MALONE, GLORIA MCCOY,
DENNIS PHILLIPS, and
CHIEF RICK WATSON,

    Defendants.                             Case No. 06-cv-830-DRH

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

**I. INTRODUCTION**

In October, 1996, Plaintiff Debra Barker was employed as Deputy Village Clerk for the Village of Cahokia (Doc. 2, ¶ 6). She was also a member of the International Union of Operating Engineers, Local 520-B ("the Union") (*Id.* at ¶ 7). On August 30, 2005, through the Union, Plaintiff filed a grievance alleging improper reassignment of her duties to personnel outside the bargaining unit (*Id.* at ¶ 8). On September 14, 2005, Plaintiff met with her Union representative and Mayor Frank Bergman to discuss her grievance (*Id.* at ¶ 9). At this meeting, Plaintiff alleges that Mayor Bergman offered to "go on from here" if Plaintiff would agree to drop her grievance (*Id.*). Plaintiff refused (*Id.* at ¶ 10). That same day, Plaintiff alleges that

Mayor Frank Bergman terminated Plaintiff's employment as Deputy Clerk (*Id.* at 11).

On October 4, 2005, Village Board Trustees JoAnn Malone, Gloria McCoy, and Dennis Phillips (the "Board" or "Trustees") confirmed Plaintiff's termination on appeal (*Id.* at ¶ 12). The remaining three Trustees voted to overturn the termination. (*Id.*). In order to break the tie, Mayor Frank Bergman cast his vote, affirming Plaintiff's termination. (*Id.*). Plaintiff alleges she was not given prior written notice of the charges against her or given an opportunity to defend herself, before she was terminated. (*Id.* at ¶ 13). On October 30, 2006, Plaintiff filed the instant suit against Mayor Bergman, the Village Trustees, Chief of Police Rick Watson and the Village of Cahokia, alleging claims for deprivation of constitutional rights under **42 U.S.C. § 1983** and malicious prosecution (Doc. 2).

Before the Court is Defendants' Motion to Dismiss (Doc. 9), to which Plaintiff has opposed (Doc. 123) and Defendants have replied (Doc. 14). Defendants' Motion, filed pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**, asserts that the doctrine of absolute immunity serves to bar Plaintiff's claims. Defendants further assert that Plaintiff cannot state a claim for deprivation of her constitutional rights for speaking out as a Union member, as such speech is not considered to be of "public concern." Additionally, Defendants believe a dismissal of Plaintiff's claims for deprivation of liberty interest and malicious prosecution is warranted for failure to state a cause of action. As discussed herein, the Court deems the Motion should be granted in part.

## II. DISCUSSION

### A. Legal Standard

Previously, when ruling on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the district court assumes as true all facts well-pled plus the reasonable inferences therefrom and construes them in the light most favorable to the plaintiff. ***Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citing *Wiemerslage Through Wiemerslage v. Maine Township High School Dist. 207*, 29 F.3d 1149, 1151 (7th Cir. 1994))**. The question is whether, under those assumptions, the plaintiff would have a right to legal relief. *Id*. This standard was articulated as such:

> [U]nder "simplified notice pleading," . . . the allegations of the complaint should be liberally construed, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

***Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368, 1373 (7th Cir. 1984)(quoting *Conley v. Gibson*, 355 U.S. 41, 46-47 (1957))**.

The Seventh Circuit recently reiterated the liberal standard governing notice pleading:

> Rule 8 was adopted in 1938, and *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), stressed that it does not require fact pleading. It is disappointing to see a federal district judge dismiss a complaint for failure to adhere to a fact-pleading model that federal practice abrogated almost 70 years ago. As citations in the preceding paragraphs show, however, this is among many similar dispositions that the Supreme Court and this court have encountered recently and been obliged to reverse.

***Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007)(footnote omitted);** see also ***Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998)**; ***Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413, 419 (7th Cir. 1998)**.

However, in a recent opinion issued on May 21, 2007, the Supreme Court determined that ***Conley's*** famous "no set of facts" phrase "ha[d] earned its retirement." ***Bell Atlantic Corp. v. Twombly*, \_\_\_ U.S. \_\_\_, 127 S. Ct. 1955, 1969 (May 21, 2007)**. According to the Supreme Court, the threshold pleading requirement of **FEDERAL RULE OF CIVIL PROCEDURE 8** requires a complaint allege "enough facts to state a claim to relief that is *plausible* on its face" in order to survive a Rule 12(b)(6) Motion to Dismiss for failure to state a claim for which relief can be granted. ***Id.* at 974 (clarifying that a "heightened fact pleading of specifics" is not required)(emphasis added)**. In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do . . . ." ***Id.* at 1964-65 (alteration in original)(quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))**. The plaintiff must plead factual allegations which show the right to relief exists beyond mere speculation by "rais[ing] a *reasonable expectation* that discovery will reveal evidence" to substantiate the plaintiff's claims. ***Id.* at 1965 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'")(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974))(emphasis added)**.

**B.     Analysis**

    **1.     Absolute Immunity**

Absolute immunity is applicable not only to government officials, such as a prosecutor or a judge, but also to officials performing "functionally comparable" acts in other contexts. ***Butz v. Economou*, 438 U.S. 478, 512 (1978)**. The Seventh Circuit has given absolute immunity to administrative hearing officers or adjudicators who perform quasi-judicial activities. ***Crenshaw v. Bayard*, 180 F.3d 866, 868 (7th Cir. 1999)**; ***Wilson v. Kelkhoff*, 86 F.3d 1438, 1445 (7th Cir. 1996)**. "Immunity is justified and defined by the functions it protects and serves, not the person to whom it attaches." ***Forrester v. White*, 484 U.S. 219, 227 (1988)**. Immunity only extends to the adjudicatory functions of the judicial officer and will not apply to those acts that are "purely administrative," such as terminating an employee." ***Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 622 (7th Cir. 2002)(citing *Forrester*, 484 U.S. at 223)**.

In the case at bar, defendant Mayor Bernard, acting pursuant to Cahokia City Ordinance 31.02(C), allegedly terminated Plaintiff's employment after she refused to drop her grievance with the Union. He then cast the tie-breaking vote to affirm his decision after the Village Board reviewed it. The Seventh Circuit has held that the act of terminating an employee is an administrative, rather than quasi-judicial act. *Id.* Therefore, an official cannot acquire absolute immunity by terminating an employee. *Id.* Defendants argue that the Mayor's act of affirming his

decision qualifies as a judicial act and cites the case of **Killinger v. Johnson** to support this conclusion.  The court in **Killinger**, however, likened the Mayor's act of closing a bar to issuing a temporary restraining order, which it found to be a clear judicial function.  **Killinger v. Johnson, 389 F.3d 765, 770 (7th Cir. 2004)**.  Here, the Mayor's action of affirming his own termination decision does not parallel the judicial nature of the act, as found in **Killinger**.

In analyzing whether an official is performing a quasi-judicial action, courts often evaluate the statute prompting the action.  In cases where the statute allows the government official to exercise judicial-like official powers, courts often determine the act is "quasi-judicial."  **Chicago United Industries, LTD., v. City of Chicago, No. 05-c-5011, 2007 WL 1100746 at \*6 (N.D. Ill. Apr. 10, 2007)(citing Killinger, 389 F.3d at 770)**.  In **Oshe**, the Seventh Circuit discussed what factors a court may consider in determining whether a statute or ordinance bestows certain powers upon a judge, which the Court finds analogous to factors considered when determining whether public officials are bestowed with "quasi-judicial" powers:

> In determining whether the defendant judges are entitled to absolute immunity, the court must consider both the procedures employed in the termination hearing, and the relationship of the judges to the issues and litigants appearing before them.  As to the hearing procedures, important factors include: whether Ohse was granted the right to counsel, to compel the attendance of witnesses, to cross-examine adverse witnesses and to discovery; whether a verbatim transcript of the hearing was made; whether a discernible burden of proof governed the judges' decision; and whether the testimony admitted was hearsay or patently self-serving.  Further, the judges' claim to absolute immunity would be weakened to the extent that they had personal

> familiarity with the subject matter of the dispute, were aligned in interest with one of the parties appearing before them, participated in the formulation or presentation of the arguments of either litigant or conducted an independent examination of the facts without the benefit of argument by the opposing sides.

**Ohse v. Hughes, 863 F.2d 22, 24 (7th Cir. 1988)**.

In the instant case however, the ordinance [1] cited by Defendants makes no mention of the Mayor being allowed to conduct any judicial-like actions. The ordinance merely authorizes the Mayor to remove those employees that he/she feels do not serve the interests of the Village. While the ordinance indicates that this decision should be rendered in conjunction with the advice and consent of the Village Board, no judicial activities such as fact finding, conducting hearings, or ruling on motions are authorized. Plaintiff, in fact, alleges, and Defendants do not counter, that none of these activities were employed in the process of her termination. Instead, it appears the Mayor's duty under Ordinance 31.02(C) is merely an administrative one, not a quasi-judicial action. Even though Defendants attempt to label the Mayor's act of breaking the Board's tie vote with his own, this does not override his initial act of terminating Plaintiff of his own accord. Therefore, absolute immunity shall not shield the Mayor from § 1983 liability in this matter.

---

[1] According to Defendants, the Village of Cahokia Ordinance 31.02(C) reads as follows:

> The Mayor shall supervise the conduct of all employees of the Village and see that they faithfully and efficiently discharge their duties. The Mayor shall remove an employee on any charge whenever the Mayor shall be of the opinion that the interests of the Village demand such removal, by and with the advice and consent of the Village Board.

(Doc. 10, p. 4).

Regarding Defendants who served as Trustees on the Village Board, it is more likely that the actions of the Trustees in reviewing and voting on the Mayor's decision to terminate Plaintiff can be considered quasi-judicial. The city ordinance cited by Defendants establishes that the Trustees have the authority to review the Mayor's termination of employees and render their own decision in the matter after such review. Unlike Plaintiff argues in her Response, the Board did not merely give its advice and consent to the Mayor regarding his decision to terminate her. After her termination, Plaintiff appealed to the Board. A hearing was conducted, complete with evidentiary testimony. Upon a vote, the Board decided to affirm Plaintiff's termination. The Court finds these actions fall within the limits of quasi-judicial and therefore, defendants Malone, McCoy and Phillips, as Trustees of the Village Board, and the Village of Cahokia, Illinois are shielded from § 1983 liability in this matter by the doctrine of absolute immunity.[2]

### 2. Deprivation of Constitutional Rights

Courts typically apply a three-step analysis when reviewing claims for retaliation for the exercise of First Amendment rights. First, a court must determine whether a plaintiff's conduct was protected under the First Amendment. ***Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999)**. For a public employee's speech to be protected under the First Amendment, it must be found that the "employee

---

[2] Although Mayor Bergman also served to cast the tie-breaking vote, because he was the one who made the initial decision to terminate Plaintiff, absolute immunity cannot apply to him, as his interest was "clearly aligned" with one of the parties at the affirmation hearing with the Trustees and the Board. **See *Oshe*, 863 F.2d at 24**.

spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, ___ U.S. ___, 126 S. Ct. 1951, 1958 (May 30, 2006)(citing *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968)).[3] According to the Supreme Court, a court must consider the content, form, and context of the speech when deciding whether such speech is protected by the First Amendment. *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)(stating that issues of public concern can be those that "relat[e] to any matter of political, social or other concern to the community"). *Connick* advised that courts should not review personnel decisions if a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest. *Id.* at 147.

If the speech is deemed a matter of public concern, the Court must then apply the *Pickering* balancing test, weighing "the interests of the [plaintiff], as a citizen, in commenting on matters of public concern" against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Kokkinis*, 185 F.3d at 843-44 (quoting *Pickering*, 391 U.S. at 568). A plaintiff must then show that the defendant's actions were motivated by the plaintiff's constitutionally-protected speech. *Id.* at 843. Finally, if a plaintiff shows that the constitutionally-protected speech was the reason or at least a motivating factor for the defendant's actions, then the defendant must demonstrate

---

[3] For an instructive analysis of *Garcetti, see Morales v. Jones,* ___ F.3d___, No. 06-1463, 2007 WL 2033754 at *4-5 (7th Cir. July 17, 2007).

it would have terminated the plaintiff regardless of the constitutionally-protected speech. ***Id.*** In other words, "but for" the constitutionally-protected speech, Plaintiff would not have been terminated.

Plaintiff claims she was terminated for exercising her First Amendment rights by "fil[ing] a grievance alleging improper reassignment of Plaintiff's duties to personnel outside the [collective] bargaining unit" and "exercising her rights as a member of the Union . . . speaking out on matters of public concern, including, but not limited to, work to be performed by Union employees being assigned to persons outside the Union" (Doc. 2, ¶¶ 8 & 16). Thus, the Court must first determine whether Plaintiff's act of filing a grievance against the Village of Cahokia, complaining that it was assigning work duties to persons outside of the Union, is a matter of public concern. This threshold issue is to be decided as a matter of law. ***Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991) (internal citations omitted)**.

On one hand, it appears Plaintiff's grievance may be of a more personal interest, as she alleges in one paragraph of her Complaint that it was *her* job duties that were being "improperly reassigned" to persons outside of the Union (Doc. 2, ¶ 8). However, in a separate paragraph, Plaintiff alleges her speech was of public concern as it regarded work duties being improper reassigned to non-Union employees (*Id.* at ¶ 16). Certain issues regarding Unions and collective bargaining agreements can be deemed matters of public concern. ***See, e.g., McGill v. Bd. of Ed. of Pekin Elementary School Dist. 108 of Tazewell Cty., Ill.*, 602 F.2d 774,**

778 (7th Cir. 1979); *Schlicher v. Bd. of Fire and Police Commissioners of the Village of Westmont*, 845 N.E.2d 55, 66 (Ill. App. Ct. 2006)(collecting cases). Therefore, because this First Amendment retaliation claim must be construed in the light most favorable to Plaintiff, the Court must assume her grievance was made in regards to a matter of public concern, despite Defendants' assertions otherwise.

This approach is supported by precedent. Defendants may argue that when evaluating the "form and context" of Plaintiff's speech, a grievance alone is not a means by which Plaintiff attempted to communicate with the public. However, this is not dispositive, as the Seventh Circuit has found "[i]f a public employee speaks as a citizen on a matter of public concern, her speech is entitled to First Amendment protection whether she speaks as a lone individual or as the representative of many others, and whether she does so discreetly with her co-workers or in a more public fashion. *Smith v. Fruin*, 28 F.3d 646, 653 (7th Cir. 1994)(citing *Gray v. Lacke*, 885 F.2d 399, 411 (7th Cir. 1989); *Barkoo v. Melby*, 901 F.2d 613, 619 (7th Cir. 1990)). Further, Plaintiff's concomitant personal interest in the substance of her grievance will not necessarily prohibit her speech from being characterized as a matter of public concern. *See id.* ("As we observed in *Colburn*, '[m]any public employees who speak out about conduct within their places of employment have some interest in the institution of change, and this by itself would not prevent their speech from being constitutionally protected.'")(quoting *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 587 (7th Cir. 1992))(internal citations

**omitted)**.  In other words, considering the stage of the proceedings and the Rule 12(b)(6) standard that must be applied, the Court is without adequate information to make this matter of law determination at this time.  Thus, as Plaintiff has plead a plausible right to relief, Defendants' Motion regarding Plaintiff's retaliation claim is unavailing.

### 3. Deprivation of Liberty Interest

The Seventh Circuit has held that "state employees have a liberty interest in not being discharged from their employment while being defamed such that they cannot get other government employment." ***Strasburger v. Bd. of Educ.*, 143 F.3d 351, 356 (7th Cir. 1998)**.  The essential question as to whether a plaintiff suffered a deprivation of liberty interest is whether a state actor (defendant) has attacked a person's good name in a manner that makes it "virtually impossible" for that person to find new employment. ***Beischel v. Stone Bank Sch. Dist.*, 362 F.3d 430, 439 (7th Cir. 2004)**.  If this has happened, the state actor (defendant) has thus infringed upon a plaintiff's liberty interest to pursue his/her occupation. ***Id.***

In the instant case, Plaintiff alleges she was deprived of a property interest in her employment and that she was deprived of her liberty interests to not be "subjected to ridicule, shame, humiliation and loss of professional reputation" (Doc. 2, ¶ 34).  When a former employee alleges a property or liberty interest in his/her employment with the defendant, the burden to demonstrate such an interest is on the former employee. ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 943**

**(7th Cir. 1996)**.  The Seventh Circuit has stated that the infliction of a public stigma, coupled with termination, is sufficient to state a claim for deprivation of a liberty interest.  ***Colaizzi v. Walker*, 542 F.2d 969, 973 (7th Cir. 1976)**.  Since ***Colaizzi***, however, the Seventh Circuit has applied a more stringent test to claims involving liberty interests, holding that a plaintiff must prove: 1) he was stigmatized by the defendant's conduct, 2) the stigmatizing information was publicly disclosed, and 3) he suffered tangible loss of other employment opportunities as a result of public disclosure.  ***Harris v. City of Auburn*, 27 F.3d 1284, 1286 (7th Cir. 1994)**.

Defendants assert, in their Motion, that Plaintiff fails to allege public disclosure of this "stigmatizing information" (Doc. 10, p. 8).  However, Plaintiff argues public disclosure occurred in the form of that the seventeen different misdemeanor charges brought against her for alleged misconduct (Doc. 13, p. 9; *see also* Doc. 2, ¶ 103).  These citations, coupled with Plaintiff's termination are arguably sufficient to meet the Rule 12(b)(6) pleading requirements.  In accordance with ***Bell***, the Court finds Plaintiff's allegations go beyond a mere laundry list of elements and reveal sufficient facts to "raise a reasonable expectation that discovery will reveal evidence" to substantiate her claims.  ***Bell*, 127 S. Ct. at 1965**.  Therefore, it will survive Defendants' instant Motion.

### 4. Malicious Prosecution

To state a cause of action for malicious prosecution in Illinois, the plaintiff must allege facts showing: 1) the commencement or continuance of a criminal or civil judicial proceeding by the defendant, 2) a termination of that proceeding in favor of the plaintiff, 3) the absence of probable cause for the proceeding, 4) the presence of malice, and 5) damages to the plaintiff resulting from the commencement or continuance of that proceeding. ***Allen v. Berger*, 784 N.E.2d 367, 369 (Ill. App. Ct. 2002)(citing *Swick v. Liautuad,* 662 N.E.2d 1238, 1242 (1996))**. While the plaintiff must allege facts indicating the proceeding was terminated in his/her favor, when the case is criminal in nature, the plaintiff does not need to show that there has been a verdict of acquittal. ***Joinder v. Benton Community Bank*, 82 Ill.2d 40, 45 (1980)**. Rather, "the underlying criminal proceeding must have been terminated in a manner indicative of the innocence of the accused." *Id.* To prevent a dismissal, a Plaintiff is only required to plead that the circumstances surrounding the abandonment of the criminal proceedings would compel an inference that a lack of reasonable grounds led to the dismissal of the criminal proceedings. ***Allen*, 784 N.E.2d at 372.**

In the instant case, Plaintiff has stated a claim of malicious prosecution against defendant Rick Watson, who is the Chief of Police of the Village of Cahokia, and the Village of Cahokia itself. Plaintiff alleges that prior to the seventeen misdemeanor citations issued against her, "a Grand Jury made a finding of no true

bill on felony charges concerning the same conduct" (Doc. 2, ¶ 95). Although Defendants argue a finding of "no true bill" does not support the inference that Defendants "did not honestly believe that the actions by [P]laintiff constituted criminal behavior," (Doc. 10, p. 9), Plaintiffs counter with the assertion that this finding supports her allegations that there was no probable cause to support the misdemeanor charges issued *subsequent* to the initial Grand Jury finding. Although Plaintiff has attached several exhibits to her Response, the Court will not consider them as this is a Rule 12(b)(6) Motion and is unwilling to engage in a summary judgment analysis. Therefore, the Court is unable to review documentation to chronologize the Grand Jury findings to determine if they belie Plaintiff's allegations. Accordingly, because the allegations are construed in the light most favorable to Plaintiff, her claim of malicious prosecution must survive dismissal.

### 5. Illinois Tort Immunity Act

Defendants also move for a dismissal of Plaintiff's malicious prosecution claim aginst the Village of Cahokia, arguing that under the Illinois Tort Immunity Act,[4] if Chief Watson is not liable for malicious prosecution, the Village cannot then be held liable (Doc. 10, p. 9). Because the Court has deemed Plaintiff's claim for malicious prosecution against Chief Watson cannot be dismissed, Defendants' argument in this regard is moot.

---

[4] **745 ILL. COMP. STAT. 10/2-109** of the Illinois Tort Immunity Act reads, "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

### III.  CONCLUSION

Defendants' Motion to Dismiss (Doc. 9) is hereby **GRANTED IN PART AND DENIED IN PART**.  Specifically, the Court finds that absolute immunity applies to bar Plaintiff's right to relief on her claims against the Village Trustees, defendants Malone, McCoy and Phillips.  Therefore, Counts III, IV and V of Plaintiff's Complaint (Doc. 2) are hereby **DISMISSED WITH PREJUDICE**.  The remaining claims, Counts I, II, VI and VII remain viable claims at this stage of the proceedings as the Court finds all of Defendants' other grounds for dismissal to be without merit.  Lastly, on June 19, 2007, the Court issued an Order (Doc. 21) granting Defendants' Motion to Stay Discovery pending the resolution of the Motion to Dismiss (Doc. 19).  As the applicability of immunity has now been resolved herein, the Court therefore **LIFTS** the stay of discovery.

**IT IS SO ORDERED**.

Signed this 13th day of August, 2007.

<u>/s/         David  RHerndon</u>
**United States District Judge**